John **STOLARZ**, Appellant-Defendant,

v.

**STATE of Indiana, Appellee-Plaintiff.**

No. 4–882A259.

Court of Appeals of Indiana, Fourth District.

Feb. 16, 1983.

Ed., Repl.1979).

Daniel Toomey, Toomey & Woloshansky, Merrillville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant-appellant John Stolarz (John) appeals his conviction for voluntary manslaughter, but mentally ill.

We affirm.

ISSUES

This appeal presents the following issues:

1. Whether the trial court erred by not holding a hearing during trial to determine John's competency to stand trial.

2. Whether the trial court's order for John to be interviewed by two medical witnesses employed by the State after he entered a special plea of insanity violated his Fifth Amendment right against compulsory self-incrimination.

FACTS

John was 87 years old, his wife 70, at the time he shot and killed her. They had been married 38 years at the time.

After his indictment, John filed a special plea of insanity and a motion alleging he lacked the ability to understand the proceedings and assist in the preparation of his defense. The court appointed two psychiatrists who examined John for both comprehension and insanity at time of commission. One reported though competent to stand trial John was insane at the time of the crime, the other failed to report on John's competency to stand trial, but found his plea of insanity was invalid. After hearing, the court found John was competent to

stand trial, and had adequate comprehension for arraignment purposes. Four months after arraignment, the State moved the court for the examination of defendant by two expert witnesses it had hired. At the hearing thereon, John's counsel argued such an order would compel John to incriminate himself in violation of his Fifth Amendment right against self-incrimination. The court granted the State's motion and the examinations took place as the order required.

During the testimony of one of the State's expert witnesses at trial, the court admonished the prosecution

> BY THE COURT: That's the way I read it, Counsel. And I'm saying you are not to elicit from him any testimony that he may have received from this Defendant as to the actual matter before the Court. Go up to and after that, but he is not permitted to testify before this Jury, what the Defendant told him relevant to the shooting of Helen Stolarz.

The witness gave no testimony as to what, if anything, John told him about the crime itself.

DISCUSSION AND DECISION

I.

John first argues the court erred by not holding a second hearing during trial to determine whether he was competent to stand trial at that time under the provisions of Ind.Code 35–5–3.1–1.[1]

1. Indiana Code 35–5–3.1–1, reads verbatim, as follows:

> Sec. 1. (a) If at any time before the final submission of any criminal case to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) competent disinterested psychiatrists, who shall examine the defendant for the purpose of forming an opinion as to whether the defendant has that ability and shall testify concerning the same at the hearing.

John claims his testimony on direct examination at trial was verbose and rambling even though (a) the court repeatedly admonished John to confine his answers to the questions asked, (b) appointed a Polish interpreter to assist him, and (c) permitted leading questions on direct examination in an attempt to confine his answers to the scope of his counsel's examination, all without success. He claims the trial court erred by not granting one of the State's two motions for mistrial because his verbose and rambling testimony gave the trial court reasonable grounds to believe he lacked comprehension.

We first note John made no motion of his own for mistrial or comprehension hearing at trial. A party may not take advantage of his adversary's motion or objection in the trial court as a ground for reversal on appeal. Ind.Rules of Procedure, Trial Rule 46 provides in part:

> ... it is sufficient that a party, at the time the ruling or order of the court is made or sought, *makes known to the court* the action which he desires the court to take or his objection to the action of the court and his grounds therefore; .... (Emphasis supplied.)

In his comments to Trial Rule 46, Dean Harvey explains the Rule's purpose:

> The basic purpose of the Rule is to insure that (a) the trial court is apprised of the party's position so that it may avoid or rectify error, and (b) the adverse

> (b) At the hearing, other evidence may be introduced if relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of his defense. If the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of his defense, the trial shall proceed. If the court finds that the defendant lacks that ability, the trial shall be delayed or continued, and the court shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution. *As amended by Acts 1978, P.L. 145, Sec. 5.*

party is afforded a like opportunity.... A secondary purpose is to have the record show that the *party adversely affected considered the order or ruling sufficiently significant to constitute reversible error* in the event of appellate review. (Emphasis supplied.)

3 W. Harvey, Indiana Practice § 46.1 at 340 (1970).

■ Because no motion was made, the trial court was not apprised John's counsel considered his testimony so garbled and disjointed as to indicate John did not have sufficient comprehension to stand trial. Thus, the issue is waived on appeal unless it constitutes fundamental error. *Lax v. State,* (1981) Ind., 414 N.E.2d 555, 556; *Johnson v. State,* (1979) Ind., 390 N.E.2d 1005, 1010.

■ Was it fundamental error for the trial court not to hold a competency hearing? Whether indicators were present which would require a trial court to hold an IC 35–5–3.1–1 competency hearing is to be determined upon the facts of each case. The decision as to whether a competency hearing should be held lies in the province of the trial court. Its decision will be disturbed on appeal only where clear error is shown. *Malo v. State,* (1977) 266 Ind. 157, 361 N.E.2d 1201, 1204; *Brown v. State,* (1956) 235 Ind. 186, 131 N.E.2d 777, 779. While John's answers were somewhat rambling and verbose, they were responsive. The mere fact he was a difficult witness is not, in and of itself, grounds for reversal of the trial court. Considering all of the circumstances of this case, the trial court did not abuse its discretion by failing to hold a competency hearing.

We find no fundamental error here.

## II.

John next argues the court's order requiring he be examined by State employed medical witnesses violated his right against self-incrimination under the Fifth Amendment to the United States Constitution.

We disagree.

IC 35–5–2–2 reads as follows:

At the trial of such a case, evidence may be introduced to prove the defendant's sanity or insanity at the time at which he is alleged to have committed the offense charged in the indictment or information. When notice of an insanity defense is filed, the court shall appoint two (2) or three (3) competent disinterested psychiatrists to examine the defendant and to testify at the trial. Such testimony shall follow the presentation of the evidence for the prosecution and for the defense, *including testimony of medical experts employed by the state* and by the defense, if any. The medical witnesses appointed by the court may be cross-examined by both the prosecution and the defense, and each side may introduce evidence in rebuttal to the testimony of such medical witnesses. (Emphasis supplied).

Our Supreme Court recently held this statute (now repealed) was neither unconstitutionally vague nor susceptible of misinterpretation. *Taylor v. State,* (1982) Ind., 440 N.E.2d 1109, 1111.

■ When John filed his insanity defense, he brought the statute into play. Such psychiatric examinations do not jeopardize the Fifth Amendment right against self-incrimination. *Berwanger v. State,* (1974) Ind.App., 307 N.E.2d 891, 894; *Weaver v. State,* (1966) 247 Ind. 315, 215 N.E.2d 533, 536; *Noelke v. State,* (1938) 214 Ind. 427, 15 N.E.2d 950, 953. John points out, however, all these cases were decided prior to the legislature's placing the burden of proof in insanity cases upon the defendant, he to prove the same by a preponderance of the evidence, *cf.* IC 35–41–4–1. He cites the "fair state-individual balance" requirement announced in *United States v. Albright,* (4th Cir.1968) 388 F.2d 719, and claims the burden change throws this relationship out of balance. He argues because the burden was upon him to prove his insanity by a preponderance of the evidence because of the legislative change, his forced examination by the State's expert witnesses violated his constitutional right against self-incrimination. He charges by ordering his examinations by the State's medical ex-

perts, the trial court acted outside its statutory authority under IC 35–5–2–2. However, he cites no authority in support of this position other than *Albright, supra.* We are not persuaded.

 John voluntarily filed his insanity defense. Even though he may have made incriminating statements during his examinations by the State's medical experts, his right against self-incrimination was not violated. He was not compelled to file his insanity plea. The Fifth Amendment prohibits only compelled self-incrimination. *Estelle v. Smith,* (1981) 451 U.S. 454, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359; *Allen v. State,* (1981) Ind., 428 N.E.2d 1237; *State ex rel. Keller v. Criminal Court of Marion County,* (1974) 262 Ind. 420, 317 N.E.2d 433. It is a personal right which attaches basically to the person, not to incriminating information, *Spears v. State,* (1980) Ind., 403 N.E.2d 828, and may be knowingly and intelligently waived, *Miranda v. Arizona,* citation superfluous.

John's examinations were merely part of an established medical procedure for determining his comprehension and sanity at time of commission. They were not designed to extract incriminating statements from him for use as evidence in the State's case in chief. Examinations for such purpose are similar to a defendant's compelled speaking or physical display at trial, long recognized as constitutionally permissable, *Bivins v. State,* (1982) Ind., 433 N.E.2d 387; *Allen, supra,* 428 N.E.2d 1239; *Wooten v. State,* (1981) Ind.App., 418 N.E.2d 538, the only difference being his psychological makeup, rather than a tattooed arm or a hand with missing fingers is on display.

By shifting the burden of proof as to insanity, the legislature did not, *ipso facto,* deny the State the right to make its defense thereto. IC 35–5–2–2 remained unamended, even though the burden of proof was changed. It specifically provides for testimony by other than court-appointed psychiatrists at the close of the case in chief. Medical evidence is then to be received "including testimony of medical experts employed by the State."

The scope of discovery in criminal cases generally lies within the sound discretion of the trial court. *Kusley v. State,* (1982) Ind., 432 N.E.2d 1337, 1339; *Dooley v. State,* (1981) Ind., 428 N.E.2d 1, 5; *William v. State,* (1981) Ind., 417 N.E.2d 328, 331. We do not believe the court abused its discretion in this matter, especially in view of its admonition to the prosecution during the testimony of Dr. Bucur.

Under the circumstances of this case, John's right against compulsory self-incrimination was not violated.

Finding no error, we affirm.

YOUNG, P.J., and MILLER, J., concur.