**Earl Lee BUDD, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 784S283.**

Supreme Court of Indiana.

Nov. 18, 1986.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

1. Ind.Code §§ 35–42–1–1, 35–41–5–1.

2. Ind.Code 35–42–4–2.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant-Appellant Earl Lee Budd was convicted by a jury of attempted murder [1], a class A felony, and criminal deviate conduct [2], also a class A felony. He was sentenced to two consecutive 50–year terms, the maximum possible sentence under the charges.[3] Restated, the issues in this direct appeal are:

1. failure to hold a hearing on a motion to determine defendant's competence to stand trial and failure to formally rule on the motion;

2. alleged violation of order for separation of witnesses by allowing testimony from a witness initially excluded from the order;

3. sufficiency of the evidence; and,

4. reasonableness of sentence.

We affirm the conviction and sentence imposed.

### ISSUE I

Defendant argues that the trial court erred in failing to hold a hearing on his motion to determine competence to stand trial, and in failing to formally rule on the motion. These assignments of error were not preserved for review.

The motion to correct errors specified the trial court's allegedly erroneous determination that defendant was competent to stand trial. It did not identify or specify questions of whether the trial court should have held a hearing on the motion or formally entered a ruling. The difference is more than semantic. The motion to correct errors alleges a *substantive* error in the determination that defendant was competent to stand trial. Defendant's brief in this Court argues two (2) alleged *procedural* errors in the trial court's disposition of the motion. The grounds of error urged on

3. Ind.Code § 35–50–2–4.

appeal may not differ from those raised at trial. *E.g., Maiden v. State* (1985), Ind., 477 N.E.2d 275, 277.

We further note that defendant proceeded to trial without objecting to the court's failure to hold a hearing on the motion or to enter a ruling. Generally, error cannot be claimed on the subject matter of a motion never ruled on by the trial court. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, 1310; *Watkins v. State* (1983), Ind., 446 N.E.2d 949, 963. In *Heartfield v. State* (1984), Ind., 459 N.E.2d 33, 36–37, the defendant contended his arraignment was invalid because no determination of his competence had been made as of the time of arraignment. This Court found no reversible error as the defendant had proceeded to trial without objecting on the basis he was not competent when arraigned. In *Powell v. State* (1982), Ind., 440 N.E.2d 1114, 1118–19, any error was waived where the grounds urged on appeal (failing to hold a competency hearing) were different than the grounds raised at trial. Similarly, in *Stolarz v. State* (1983), Ind.App., 445 N.E.2d 114, 115–17, the Court of Appeals applied waiver to alleged error in the trial court's failure to hold a competency hearing after the defendant had testified, because counsel had made no motion for mistrial or determination of comprehension. Although not precisely analogous to this case, these authorities support the general principle that alleged errors in determination of competency are subject to the usual rules of appellate review, and are waived if the defendant proceeds to trial without objection. Accordingly, the contentions argued by defendant were not preserved for review in this case.

■ Had the errors been preserved, substantial evidence supports the conclusions that defendant was competent to stand trial, and that the trial court made no error in failing to hold a hearing. Three psychiatrists found defendant competent to stand trial, though two of them, noting his substantial prior history of mental illness, suggested he may have been suffering from mental illness at the time of the crimes.

We are cited to no other evidence supporting the need for the trial court to hold a hearing and take further evidence beyond these reports. Under Ind.Code § 35–36–3–1 the trial court has discretion to hold a hearing if there are "reasonable grounds for believing" the defendant is not competent to stand trial. Justice Pivarnik wrote in *Powell*:

> This Court stated in *Brown v. State*, (1976) 264 Ind. 484, 487, 346 N.E.2d 559, 560:
>
>> "The right to such a hearing is not absolute or automatic but is dependent upon the presence of reasonable cause to suspect that the defendant is incompetent to stand trial ... [T]he trial judge concluded that there was no reasonable ground for believing the defendant to be insane or incompetent to stand trial and under these circumstances, he was not required to hold a hearing contemplated under the statute."

It is within the discretion of the trial judge to make this determination based on all the facts and circumstances before him and we will not disturb that judgment unless it appears there was an abuse of discretion. In addition to the observations made by the trial judge at the time he denied this motion, the record shows that the appellant took the stand and testified in his own behalf. His testimony reveals he was aware of all of the facts and circumstances regarding the charges against him and gave a different version, claiming consent by the victim, that belied any claim of incompetency. The trial judge did not err on this issue.

440 N.E.2d at 1119–20. In addition to the psychiatric reports, we note that defendant, in a *pro se* letter to the trial judge, requested that any notice of insanity plea be withdrawn. He testified lucidly in his own behalf, and his testimony reveals "he was aware of all of the facts and circumstances regarding the charges against him." Therefore, had the assignments been preserved as argued, we would find no error in the conclusion defendant was competent to

stand trial, nor in the trial court's failure to hold an evidentiary hearing on the motion. Although the court should have entered a formal order denying the motion, its failure to do so in this case was harmless.

## ISSUE II

■ Defendant argues that the trial court abused its discretion in allowing Captain Neil Richards to testify during the State's rebuttal when the court had entered an order for separation of witnesses. Captain Richards had assisted the prosecutor during trial.

The trial court's action was consistent with prior decisions of this Court. *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236; *Gee v. State* (1979), 271 Ind. 28, 389 N.E.2d 303; *Hilligoss v. State* (1970), 253 Ind. 443, 255 N.E.2d 101. In *Hilligoss*, we stated:

> The matter of separation of witnesses is left to the sound discretion of the trial court. The court was acting well within this discretion in permitting the prosecutor to retain the investigating police officer to aid him in the prosecution of this case. The fact that this officer was also a witness who later testified in the case does not render the trial judge's discretion abusive.

*Id.* at 446, 255 N.E.2d at 104. We find no error upon this issue.

## ISSUE III

■ Defendant argues that the evidence was not sufficient to sustain the verdict. In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The crux of defendant's contention is the victim's identification of him as the assail-

ant. The victim, D.M., was a 14–year–old boy at the time of this assault. He testified that the defendant, then 18 years old, drove D.M. and several other boys around while they smoked several marijuana cigarettes. Defendant dropped the victim off, took the other boys to another location and then, by pre-arrangement, returned. He again drove the victim around as they smoked more marijuana. D.M., by then quite intoxicated, twice fell asleep. After D.M. awoke the second time, defendant sexually assaulted him, and then led D.M. into a wooded area and there choked and stabbed him three separate times, inflicting serious injuries to the lungs and barely missing D.M.'s heart. When first interviewed after the incident, D.M. denied knowing who had attacked him, but subsequently described the attacks and identified defendant as the assailant.

■ Defendant argues that D.M.'s change of story, when considered with his substantial marijuana intoxication and the reflection on his credibility stemming from his willingness to use marijuana, makes D.M.'s testimony inherently unbelievable. We disagree. Defendant's arguments go to the credibility of this witness, which is for the jury to determine. This is not a case where this Court is confronted with inherently improbable, coerced, equivocal or wholly uncorroborated testimony of "incredible dubiousity." *See, Rodgers v. State* (1981), Ind., 422 N.E.2d 1211, 1213; *cf. Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240 (uncorroborated testimony of prosecuting witness improbable and incredible). D.M.'s testimony was lucid and internally consistent, and of course corroborated by the very serious injuries to his lungs.

■ Defendant also suggests that the evidence established his defense of mental disease or defect at the time of these crimes. While defense counsel at one point had filed a notice of this defense, the defendant personally wrote a letter to the trial judge, as noted above, asking that any defense of mental disease or defect be withdrawn. The issue was not litigated at

trial. During pre-trial proceedings to determine the defendant's competence to stand trial, two of the psychiatric reports received by the court contained language raising possible concerns regarding the defendant's mental state at the time of the incident. Ind.Code § 35–41–4–1(b) provides that "the burden of proof is on the defendant to establish the defense of insanity by a preponderance of evidence." The record clearly fails to support defendant's contention on appeal that a "defense of insanity was established by a preponderance of the evidence."

We therefore find that a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt.

### ISSUE IV

Upon the attempted murder and criminal deviate conduct convictions, the trial court sentenced defendant to 50 years imprisonment upon each charge. This is the maximum sentence for a class A felony. Ind. Code § 35–50–2–4. The court further ordered the sentences to be served consecutively. Thus, the trial court imposed the maximum possible sentence in this case. Defendant now contends that this is manifestly unreasonable.

 Ind.Code § 35–38–1–3 requires that if the trial court finds aggravating or mitigating circumstances, its record must include "a statement of the court's reasons for selecting the sentence that it imposes." The statement of reasons should contain three elements: a) identification of all significant mitigating and aggravating circumstances found, b) specific facts and reasons which lead the court to find the existence of each such circumstance, and c) articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250; *Jones v. State* (1984), Ind., 467 N.E.2d 681. Thoroughness and specificity in the sentencing statement facilitate meaningful appellate review. The trial court should not simply repeat statutory language. *Totten v. State*

(1985), Ind., 486 N.E.2d 519; *Page v. State* (1981), Ind., 424 N.E.2d 1021.

The trial court's statement of reasons are set forth in the sentencing transcript wherein the trial judge extensively reviews the aggravating circumstances, and includes the following sole reference to the possible existence of mitigating factors:

> The only mitigating factors that the court could find is [sic], to fit within the scheme of things is, the fact that you are 18 years old and that there had apparently been some substance abuse.

The trial judge then finds that neither of the mitigating circumstances "in any way affect the degree of aggravating circumstances", and proceeds to impose the maximum sentence.

At the sentencing hearing, the defendant did not identify the presence of any other mitigating circumstances. On appeal, he now alleges that the sentence is manifestly unreasonable because it was pronounced without consideration of two further mitigating factors: a) "less than a wholesome family background, which included fights with his alcoholic father;" and, b) mention by psychiatrists in pre-trial reports suggesting "the possibility of defendant's being mentally disordered." The evidence of "less than a wholesome family background" to which we are cited by defendant's brief consists of certain trial testimony of the defendant. In support of defendant's denial of the victim's version of the incident, defendant claimed that he was not present. In explaining his whereabouts, the defendant stated he spent all night at a nearby pond because of fear of his father's anger. He claimed that on the night of the incident he was "kind of scared to go home" … "because my old man's a alcoholic" … "and he's got a violent temper," that on occasions defendant was severely beaten by his father, and that defendant was afraid that his father might punish him for having the car out late without permission. Defendant also testified that upon returning home late, he didn't go into his dad's trailer because he was afraid of his father's anger. In finding the defendant guilty, the jury obviously rejected de-

fendant's testimony that he slept at the pond in fear of his father's alcoholic wrath.

■ Failure to find mitigating circumstances when clearly supported by the record may reasonably give rise to a belief that they were overlooked, hence not properly considered. *Jones v. State* (1984), Ind., 467 N.E.2d 681, 683. We do not find the existence of any mitigating circumstances shown by the record which were not considered by the trial judge.

■ Rule 2 of the Ind. Rules for the Appellate Review of Sentences provides:
(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.
(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed.

During the sentencing hearing in this case, the trial judge carefully reviewed the sentencing factors specified in Ind.Code § 35–38–1–7(a–c). Significant to several of his conclusions was defendant's prior conviction of involuntary manslaughter entered under a plea bargain when he was 14 years old. Defendant was sent to the state hospital in Madison following this conviction, although he was convicted as an adult. Reviewing the factors specified in Inc.Code § 35–38–1–7(a), the trial judge found a substantial prison term justified by the prior homicide, the circumstances of the present assault, and the psychiatrists' findings that defendant has an anti-social personality, all supporting the conclusion defendant was likely to commit another violent crime. Reviewing the specific aggravating factors set out in section 35–38–1–7(b), the court found that the defendant's prior conviction constituted a significant history of criminal activity. Further, the defendant's prior conviction, followed by the sexual assault and near homicide in this case, considered along with the psychiatrists' reports, supported the conclusion that defendant required substantial correctional and rehabilitative treatment best provided by an institution. Further, the court found that a reduced or suspended sentence would depreciate the seriousness of these crimes. In corollary remarks the judge also found that defendant lacked remorse for his acts. These factors are all supported by the record, and reflect individualized consideration.

This case confronts the Court with a young man who already has demonstrated the capacity for a heinous sexual assault, and repeated homicidal conduct. Defendant's behavior the night of the crime, i.e. isolating the victim away from his home before sexually molesting him, afterward taking him to a secluded, wooded area and only then choking and stabbing him, all support the conclusions defendant was aware that the sexual assault was morally and legally wrong, and that if the victim were not killed and later identified him, defendant would be punished for his acts.

After reviewing all the factors relevant to the sentence imposed, we conclude a reasonable person could find the 100–year total sentence appropriate for the particular offense and offender.

The convictions and sentence are affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.